UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FINDIGS, INC., <br><br> Plaintiff, <br><br> -against- <br><br> HENSON ORSER and TWO DOTS INC., <br><br> Defendants. | Case No.  22-cv-7404 <br><br> **COMPLAINT** <br><br> **TRIAL BY JURY DEMANDED** |

Plaintiff FINDIGS, INC. ("Findigs" or "Plaintiff"), as and for its Complaint against defendants HENSON ORSER and TWO DOTS INC. ("Two Dots") (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1.      This action stems from Orser's wrongful, improper, and egregious conduct both during and after his employment with Findigs. Acting in his individual capacity and through his new company, Two Dots Inc. ("Two Dots"), Orser unlawfully misappropriated Plaintiff's trade secrets and confidential information while still employed at Findigs in violation of his fiduciary duties, the parties' agreements, and in breach of applicable law.

2.      Orser is a former executive and key member of Plaintiff's team whose employment with Plaintiff ended on January 21, 2022, as a result of his resignation. Critically, while still employed by Findigs, Orser formed a new business engaged in direct competition with Plaintiff in violation of his contractual obligations and his duties of good faith and fair dealing owed to his employer.

3.      Through the present, he continues to impermissibly use and disclose Plaintiff's trade secrets and confidential information, harming Plaintiff's business by engaging in unfair competition and tortiously interfering with its prospective business relationships.

4.      Upon information and belief, Defendants used the access granted to Orser by Plaintiff to pirate Plaintiff's trade secrets and other proprietary and confidential information, including critical information about Plaintiff's customers, pricing, cost of goods, identity of vendors already trained to perform these services for Plaintiff, customer preferences, methods of doing business, including software platform design and development,  Plaintiff's strategic partnerships, password protected proprietary databases, and customers' proprietary databases entrusted in secrecy to Plaintiff, all of which a competitor could use (and, upon information and belief, that Defendants are using) to unlawfully compete with Plaintiff's business.

5.      Both before and since his separation from Plaintiff, Orser has breached his contractual and other obligations imposed upon him by virtue of express agreements and/or the duties owed to Plaintiff under applicable state and federal statutory and common law, and the access such affiliation had provided to him to Plaintiff's trade secrets and proprietary information, customer goodwill and other valuable business assets.

6.      Plaintiff is aware that Orser solicited consultants and contractors with whom Plaintiff had long-standing relationships to render services to Defendants in developing a competing business.

7.      Plaintiff is also aware of potential customers and, upon information and belief, current customers who have been contacted by Defendants for the purposes of soliciting those customers' business for Defendants' competing venture.

8.      Through this action, Plaintiff seeks to prevent Defendants from continuing this wrongful conduct and to recover the damages sustained due to said conduct.

## **PARTIES**

9.      Plaintiff is a Delaware corporation with its principal place of business in New York, New York.

10.     Defendant Orser is an individual who resides in New York, New York and is the Chief Executive Officer of defendant Two Dots.

11.     Defendant Two Dots is a Delaware corporation with its principle place of business in New York, New York.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this matter pursuant to § 28 U.S.C. § 1331 because this Complaint includes claims for Defendants' violations of the Defend Trade Secret Act ("DTSA"), 18 U.S.C. § 1832, *et seq*.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a significant portion of the events which form the basis of this Complaint arose in the geographical area which is contained within this District.

## FACTUAL BACKGROUND

### A.  Background on Findigs and Protection of Confidential Information

14.     Founded in 2018, Plaintiff is a real estate technology company that provides various services to both residential property managers and renters, including providing a streamlined application process and tenant screening services that instantly and accurately verifying income, rental history, and identity. All of Findigs services are provided through its proprietary software.

15.     Since its inception, Plaintiff has expended, and continues to expend, significant resources to develop the proprietary and trade secret information created in connection with the development of their business and customer relationships.

16.     For example, Plaintiff continually develops new, innovative solutions to meet customers' needs. Plaintiff accomplishes this by investing considerable time and resources into

understanding its customers' business model and areas of strategic focus, so that they can create necessary solutions that provide substantial value for current and prospective customers.

17.    Plaintiff employs significant measures to protect confidential, proprietary, and trade secret information, including utilizing non-disclosure agreements that prohibit the use and disclosure of trade secret or confidential information both during and after affiliation with Plaintiff.  Plaintiff employs similar agreements with all dealership clients.

18.    Plaintiff password protects its proprietary programs and systems and provides access to information only on a "need-to-know" basis.

19.    To the extent Plaintiff's personnel use personal devices for work purposes, they are required to access Plaintiff's computer systems through a secure remote connection using passwords for access, for the most part on company-issued equipment.

20.    Defendants were aware of the necessity for, and the actual use of, such measures and availed themselves of measures to protect the proprietary nature of Plaintiff's trade secrets.

**B.  <u>Orser's Employment and Contractual Obligations</u>**

21.    On March 4, 2020, Orser became Plaintiff's fourth employee when he accepted an offer as Head of Business Development. In that position, Orser was tasked with selling Findigs services to property management customers, as well as discovering, evaluating, and negotiating partnerships with software vendors.

22.    On that same date, as a condition of his employment, Orser executed a Confidential Information and Invention Assignment Agreement (the "CIIA" or "Agreement").

23.    The CIIA expressly barred Orser from using and/or disclosing trade secret and confidential information other than for the benefit of Plaintiff.

24.     Under the CIIA, Orser acknowledged that he would have access to "Confidential Information" belonging to Plaintiff, and he agreed that he would not disclose or use same at all times during and after his employment, absent the Company's express approval.

25.     Additionally, Orser agreed that Plaintiff would exclusively own all work product made by him, solely or jointly with others, and irrevocably and unconditionally assigned all right, title, and interest worldwide in and to such work product to Plaintiff.

26.     Further, Orser agreed that during his employment, he would not engage in any employment or business activity which was directly or indirectly competitive with or would otherwise conflict with his employment.

27.     Orser also agreed that at all times during his employment and for one year after, he would not solicit any employees, consultants, independent contractors, customers, or potential customers.

28.     Orser agreed further that the restrictions placed on him by the Agreement were reasonable, and that Plaintiff would sustain immediate and irreparable injury due to any violation of the CIIA such that Plaintiff would be entitled to equitable relief, including an injunction.

29.     The CIIA also contains a one-way fee shifting provision that entitles Plaintiff to payment of all reasonable attorneys' fees and costs if it has to engage in legal proceedings to enforce its rights.

C.  **The Last Months of Orser's Employment and Violations of the CIIA**

30.     Orser maintained his title as Head of Business Development throughout the entirety of his tenure. During the summer of 2021, though, Stephen Carroll, Plaintiff's Chief Executive Officer, elevated Plaintiff and directed him to lead Plaintiff's development of vendor strategy and strategic partnerships.

31.     In November 2021, in furtherance of this new role, Plaintiff entrusted Orser with a critical customer need – document fraud detection.

32.     With the rise in online rental applications and document solutions, large residential landlords and property managers are dealing with a significant uptick in the submission of false identification and employment documents. These customers, who rely on Plaintiff to provide tenant screening services and to whom Orser sold those services during his employment, need a software solution to handle the sheer volume of documents and information provided by prospective tenants.

33.     Given the needs expressed by Plaintiff's customers, Carroll directed Orser to lead a market research project regarding potential vendors that could assist Plaintiff in document fraud detection.

34.     After completing such research, Orser and Carroll, as well as other Findigs employees, had numerous discussions and meetings regarding the critical nature of document fraud detection, its value to the company, and the strategy needed to be implemented in order to provide a necessary product to Findigs customers.

35.     Throughout this research and evaluation, Orser was privy to trade secrets and confidential business information. For instance, Plaintiff provided Orser with access to proprietary data and reports manually collected and prepared by Findigs concerning the success and failure rates of Findigs' vendors verifying income credentials of prospective tenants.

36.     Plaintiff also provided Orser with access to the structure of its proprietary tenant screening and verification systems that are optimized specifically for the information Plaintiff relies on to service its customers.

37.     Orser only had access to this confidential and non-public information as a result of his employment at Findigs.

38.     Ultimately, Orser and Carroll determined that no vendor existed that could provide the service required by Plaintiff's customers. Instead, in December 2021, the two determined that Findigs would need to build out the document fraud detection feature internally.

39.     Orser was heavily involved in the planning and development of the document fraud detection feature and had extensive knowledge regarding the proprietary and confidential design and structure of the programming that Findigs was going to utilize. During this time, Plaintiff began interviewing and hiring software engineers to build such a platform.

40.     However, rather than continue working with Plaintiff to complete the development of this critical internal product, Orser elected to violate his contractual obligations by forming a direct competitor to Findigs while still employed by Findigs.

41.     Unbeknownst to Plaintiff, Orser had no intention of actually using Plaintiff's time and resources to grow its document fraud detection product. Instead, Orser used this time and company resources to begin surreptitiously planning and growing his own competing business.

42.     On or about January 4, 2022, Orser improperly solicited assistance from a strategic design studio and long-time Findigs consultant and partner in developing a product that was intended to be identical to the document fraud detection product Findigs was already constructing. In an effort to secure that partner's assistance, Orser made misrepresentations that Findigs fully supported this new venture.

43.     In reality, Findigs was entirely unaware that its Head of Business Development, with access to vast amounts of confidential information, was planning to form a new company to compete directly with them in the residential real estate market.

44.     Rather than continuing to develop the document fraud detection product for Plaintiff, Orser, a senior executive and an employee in good standing, surreptitiously formed his own business and absconded with confidential information to usurp Plaintiff in this new venture.

45.     On or about January 10, 2022, while still employed by Findigs, Orser formed Two Dots with the intent to use Plaintiff's market research and ideas, including designs, techniques, and proprietary technology, to create an identical document fraud detection product that would compete with Findigs in the residential real estate market.

46.     Orser did not inform Carroll or anyone else associated with Plaintiff that he was forming Two Dots.

47.     Orser was still employed by Plaintiff at the time he formed Two Dots and was still being compensated for his efforts.

48.     Plaintiff did not provide express written consent, or any consent whatsoever, for Orser to form Two Dots during his employment, or to engage in any employment or business activity which is competitive with his employment with Plaintiff.

49.     Usurping Plaintiff's document fraud detection product surreptitiously is competitive activity prohibited by the CIIA.

50.     Usurping Plaintiff's document fraud detection product surreptitiously is competitive activity prohibited by federal and state law.

51.     Such research and ideas are defined as "Confidential Information" in the CIIA, and their use and disclosure is expressly prohibited.

52.     Orser voluntarily resigned from his Findigs employment on January 21, 2022, 11 days after forming Two Dots.

53.     Two Dots has developed a product based on the Confidential Information possessed and unlawfully used and disclosed by Orser that directly competes with Plaintiff.

54.     Defendants stole the concept and product from Findigs. Orser tacitly admitted to that on a prior version of the Findigs website:



55.     To be clear, Orser did not "realize[] there must be a better way." Instead, Plaintiff identified a need in the market based on its manually collected proprietary data and directed Orser, as part of his duties as a Findigs employee, to participate in the research and development of a document fraud detection product for large residential property managers and landlords.

56.     Now, Defendants are offering those same document fraud detection services to Plaintiff's customers and potential customers in the residential real estate market, as defined in the CIIA. According to a recent post from Orser announcing Defendants' participation in Y Combinator, Defendants' "biggest focus today is getting more customers," specifically those who are "managing thousands of rental properties."

> **How You Can Help**
>
> Our biggest focus today is getting more customers, **so if you know anyone managing thousands of rental properties we would love an intro!** You can reach me at henson@twodots.net or text me at 415-699-6416 to make it happen.

57.     Orser, as Plaintiff's former Head of Business Development, had direct access to Plaintiff's customer relationship system and had expansive knowledge of Plaintiff's current customers and potential customers.

58.     Orser had direct access to Plaintiff's proprietary and trade secret customer diligence process, including the process for finding leads, evaluating potential customers, and determining the method and manner by which to contact them, and the pricing structure available to them based on specific criteria.

59.     Plaintiff trained Orser directly on each aspect of its customer diligence process and developed all training and marketing materials used.

60.     Unsurprisingly, large residential property managers and landlords represent Plaintiff's existing customers and the primary potential customer base for the fraud detection product.

61.     Plaintiff and Defendants have met with common potential customers within the last several weeks regarding their document fraud detection products.

62.     Upon information and belief, Defendants are actively soliciting Plaintiff's current and prospective customers.

63.     Defendants are using Orser's former association with Plaintiff to capitalize on Findigs' goodwill and sow confusion in the marketplace in order to pitch its identical product to the Plaintiff's customers and potential customers. For instance, as set forth above, an earlier version of the Two Dots website stated that Orser was "the 4th employee at Findigs," and it was there that Orser "s[aw] up close how broken the income verification process is."

64.    Defendants' improper competitive activity has necessarily entailed their use and disclosure of Plaintiff's trade secrets and proprietary and confidential information with respect to document fraud detection.

65.    Upon information and belief, Defendants would be unable to provide the products and services that Plaintiff supplied without having wholesale copied same from Plaintiff in order to use same to enable them to succeed in their unfair competition.

66.    Defendants are acting in bad faith by misappropriating Plaintiff's trade secrets and proprietary and confidential information and impermissibly using it for their own benefit to compete, to Plaintiff's detriment.

67.    Upon learning of Defendants' improper conduct, Plaintiff sought to resolve matters informally and amicably to no avail.

68.    Faced with no alternative, Plaintiff caused a cease and desist letter to be sent to Defendants on or about June 20, 2022.

69.    To date, Defendants have failed to commit to discontinuing their unlawful conduct.

70.    Upon information and belief, Defendants continue to aggressively target Plaintiff's other customers, seeking to capitalize on the relationships formed while employed by Plaintiff, the goodwill Plaintiff has built with these customers, and the trade secret and proprietary information belonging to Plaintiff that Defendants are improperly using.

## **COUNT I**
### *Breach of Contract*
### *(as to defendant Orser)*

71.    Plaintiff repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

72.     As described in detail in the paragraphs above, Orser entered into a valid and enforceable CIIA with Plaintiff on March 4, 2020.

73.     The CIIA is supported by valuable and adequate consideration and was voluntarily executed by Orser.

74.     The restrictions in the CIIA were intended to protect Plaintiff's customer goodwill, their trade secrets and confidential information, and other valid business interests. The restrictions are reasonably necessary for Plaintiff's protection.

75.     As set forth more fully above, Orser is in material breach of numerous provisions of the CIIA, including but not limited to Sections 1.1, 1.2, 2.3, 2.7(b), 4, and 5.

76.     Despite the contractual obligations that Orser agreed to, he has materially violated (and continues to violate) those obligations. Those violations have been knowing, willing, and voluntary and are intended to harm Plaintiff' in its business affairs.

77.     Plaintiff has suffered and will continue to suffer irreparable injury in addition to monetary damages as a direct and proximate result of Orser's improper conduct in an amount that cannot be reasonably ascertained at this time.

78.     Absent the imposition of injunctive relief, Defendants will continue their unlawful actions unabated and Plaintiff will continue to be harmed.

**COUNT II**
***Misappropriation of Trade Secrets under the***
***Defense of Trade Secrets Act, 18 U.S.C. § 1832, et seq.***
***(as to all Defendants)***

79.     Plaintiff repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

80.     Defendants have acquired access to and knowledge of Plaintiff's trade secrets by virtue of Orser's prior employment with Plaintiff in which he occupied positions of trust that provided him with access to Plaintiff's trade secrets and proprietary information.

81.     Plaintiff's trade secrets include, but are not limited to, customer identities, Plaintiff created proprietary software and designs entrusted to Plaintiff for safekeeping, and methodologies for marketing and servicing customers and potential customers that derive independent economic value by not being available to the general public, could not be originated by another party, and were compiled at great expense to Plaintiff.

82.     Competitors and intermediaries such as Defendants can profit from the use and disclosure of this trade secret information, as Defendants are now doing.

83.     Plaintiff's trade secrets are related to a product or service used in or intended for use in interstate commerce.

84.     Plaintiff has taken reasonable measures under the circumstances to protect its trade secrets and proprietary information.

85.     As set forth at length herein, Defendants have misappropriated Plaintiff's trade secrets by using and disclosing, and/or will continue to use and/or disclose, Plaintiff's trade secrets to unjustly benefit himself without Plaintiff's express or implied consent.

86.     At the time of the use and disclosure, Defendants knew that Plaintiff's trade secrets had been derived and acquired by them through improper means.

87.     Defendants engaged in the foregoing conduct intending or knowing that it would injure and/or harm Plaintiff.

88.     Defendants' conduct has been willful and malicious and undertaken with reckless indifference to Plaintiff's rights.

89.     As a direct and proximate result of Defendants' conduct Plaintiff has suffered and will continue to suffer irreparable injury in addition to monetary damages in an amount which cannot be reasonably ascertained at this time.

90.     Unless enjoined by this Court, Defendants will continue their unlawful actions and Plaintiff will continue to be irreparably harmed.

**COUNT III**
***Misappropriation of Trade Secrets under New York Common Law***
***(as to all Defendants)***

91.     Plaintiff repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

92.     As described in detail in the paragraphs above, by virtue of Orser's prior employment with Plaintiff, Defendants acquired access to, and knowledge of, Plaintiff's trade secrets.

93.     Plaintiff has taken reasonable and appropriate measures under the circumstances to maintain the secrecy of its trade secrets.

94.     As set forth at length herein, Orser exploited his fiduciary position with Plaintiff, in order to misappropriate Plaintiff's trade secrets, and Defendants have used and disclosed, and will continue to use and/or disclose, Plaintiff's trade secrets to unjustly benefit themselves and their new business without Plaintiff's express or implied consent and to Plaintiff's detriment.

95.     At the time of the use and disclosure, Defendants knew that they had acquired and obtained continued access to Plaintiff's trade secrets through improper means without authorization or permission.

96.     Defendants engaged in the foregoing conduct intending or knowing that it would injure and/or harm Plaintiff.

97.    Defendants' conduct has been willful and malicious and undertaken with reckless indifference to Plaintiff's rights.

98.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer irreparable injury in addition to monetary damages in an amount which cannot be reasonably ascertained at this time.

99.    Unless enjoined by this Court, Defendants will continue their unlawful actions and Plaintiff will continue to be irreparably harmed.

### COUNT IV
*Violation of the Lanham Act, 15 U.S.C. § 1125(A)(1)*
*(as to all Defendants)*

100.    Plaintiff repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

101.    As set forth above, Defendants have recklessly made misleading representations that are likely to and have caused confusion or mistake as to the affiliation, connection, or association of Two Dots with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Plaintiff, all of which has caused customer confusion, resulting in injury to Plaintiff's customer relations, prospective customer relations, and business.

102.    Because both Plaintiff and Defendants provide their services and products nationally, the misleading representations involve products and services in interstate commerce and/or which substantially affect the interstate commerce of Plaintiff's products and services.

103.    The misleading representations are material pursuant to 15 U.S.C. § 1125(a) of the Lanham Act, in that they are likely to influence (and already have influenced) the business decisions of Plaintiff's actual, former, and potential customers.

104.    Defendants have actually misled and/or have the tendency to mislead a substantial segment of Plaintiff's actual and prospective customers.

105.    Defendants made such misleading representations with reckless disregard for the truth.

106.    As a result of Defendants' actions, Plaintiff has been and is likely to be injured, both by direct diversion of business and by a reduction of the goodwill associated with its services and products.

107.    As a direct and proximate consequence of the foregoing, Plaintiff has sustained damages and will continue to suffer injury, irreparable harm, and loss.

## COUNT V
### *Tortious Interference with Prospective Economic Benefit*
### *(as to all Defendants)*

108.    Plaintiff repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

109.    Plaintiff has undertaken significant effort to safeguard its confidential and proprietary information and trade secrets, and minimize the business disruption caused by employees and former employees interfering with customers and current employees. Plaintiff has rightfully developed an expectation that the investment made in its employees and the goodwill developed with customers would bear economic fruit.

110.    Recognizing the potential and value of Plaintiff's efforts, Defendants have purposefully and maliciously interfered with Plaintiff's ability to realize the economic benefits of its successful business efforts.

111.    Upon information and belief, Defendants are targeting Plaintiff's current and potential customers. Plaintiff would be engaged to provide services to Defendants absent Defendants' meddling.

112.    Plaintiff has suffered and will continue to suffer irreparable injury in addition to monetary damages as a direct and proximate result of Defendants' unlawful conduct, which cannot be reasonably ascertained at this time.

113.    Unless restrained by this Court, Defendants will continue their unlawful conduct and Plaintiff will continue to be harmed.

**COUNT VI**
*Breach of the Duty of Good Faith and Fair Dealing*
*(as to defendant Orser)*

114.    Plaintiff repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

115.    As set forth in detail above, Plaintiff and Orser entered into valid and enforceable CIIA, in March 2020.

116.    The CIIA is supported by valuable and adequate consideration and was voluntarily agreed to by Orser.

117.    Orser breached the duty of good faith and fair dealing inherent in the CIIA by intentionally misusing company time and resources to form and grow a competing business and by his knowing misappropriation of Plaintiff's confidential business information and trade secrets.

118.    Orser's actions have deprived Plaintiff of the benefits reserved to it under the CIIA.

**COUNT VII**
*Unfair Competition*
*(as to all Defendants)*

119.    Plaintiff repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

120.    Plaintiff and Defendants are now competitors. By engaging in the conduct described herein, Defendants have committed unfair competition including by in bad faith

misappropriating the results of the trade secrets, proprietary information, skill, expenditures, and labors of Plaintiff.

121.    Based on Defendants' failure and refusal to cease and desist their actionable conduct as demanded by Plaintiff, Defendants will continue to receive and keep for themselves money that in equity and good conscience they should not be permitted to keep.

122.    Plaintiff is entitled to preliminary and permanent injunctive relief to ensure that all past, present and future income and revenues obtained by Defendants as a result of their unfair competition are recoverable by Plaintiff to whom they properly belong.

123.    Plaintiff has been damaged as a result of Defendants' unfair competition in an amount to be determined based on all amounts earned by Defendants by virtue of his unfair competition, and Plaintiff should be awarded punitive damages in an amount to be determined.

### COUNT VIII
### *Faithless Servant*
### *(as to defendant Orser)*

124.    Plaintiff repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

125.    Under New York law, employees have duties of good faith and loyalty to their employer in the performance of their duties.

126.    During his employment with Plaintiff, as set forth more fully above, Orser engaged in disloyal activity related to the performance of his duties, and such disloyalty permeated his service in its most material and substantial part.

127.    Orser engaged in disloyal activity when he used Plaintiff's trade secrets and proprietary and confidential information to form his own competitive business in the residential real estate market.

128.    Orser's disloyal conduct is unlawful pursuant to New York's faithless servant doctrine and caused harm to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and grant the following relief:

a.    A preliminary injunction and permanent injunction to be issued under the claims for relief plead hereinabove that permit such relief:

i.    enjoining and restraining Defendants, as well as their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's Order from violating, or participating in the violation of, any of the terms of the obligations owed to Plaintiff under the parties' agreements and by virtue of Defendants' contractual and fiduciary obligations to Plaintiff in respect of the use and disclosure of Plaintiff's trade secrets and proprietary information including in connection with the solicitation and servicing of Plaintiff's customers;

ii.    enjoining and restraining Defendants, their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's Order from contacting, soliciting, attempting to contact or solicit, and/or doing business with any current customer of Plaintiff or any entity that has been a customer of Plaintiff;

iii.    enjoining and restraining Defendants, their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's Order from utilizing, disclosing or misusing any trade secrets or confidential information belonging to Plaintiff, including, without

limitation, customer and prospect lists, marketing, sales and strategic plans, product research, customer purchasing histories, pricing information, product information, product designs, product applications, technical processes, product test and performance results, non-public internal financial information, and customer files, and databases belonging to customers;

iv.    enjoining and restraining Defendants, their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's order from transferring to any third party any trade secrets or confidential information belonging to Plaintiff including, without limitation, customer and prospect lists, marketing, sales and strategic plans, product research, customer purchasing histories, pricing information, product information, product designs, product applications, technical processes, product test and performance results, non-public internal financial information, and customer files, and databases belonging to customers;

v.    enjoining and restraining Defendants, their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's order from soliciting Plaintiff's employees for employment or affiliation, directly or indirectly, with Defendants or any other competitor;

vi.    requiring Defendants, their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's order, to preserve, and not destroy, alter, delete, or relinquish control over to any third party, any and all copies and versions (whether hard copy, native, or

electronic) of any documents or electronically-stored information (including but not limited to emails, text messages, communications over social media and any other electronic, typewritten, handwritten, recorded, or printed matter of any kind) relating to the subject matter of this lawsuit;

vii.    requiring Defendants, their agents, employees, employer, or any other individual or entity having knowledge or notice of the Court's order, to return all of Plaintiff's property including the laptop provided to defendant Lerner with all content intact, and any other computer and any other electronic, computer or storage devices of any kind (without having the data or hard drive erased before being returned);

viii.    requiring Defendants to identify any and all electronic devices that have at any times been used to access the Plaintiff's trade secrets and proprietary information, and to submit such electronic devices to a vendor of Plaintiff's choosing, at Defendants' expense, for a forensic examination aimed at discovering the extent to which the trade secrets have been downloaded, copied, printed, accessed and/or used;

b.    An order granting preliminary and permanent injunctive relief in accord with the paragraphs (a) and (b) above, and as separately may be requested at a preliminary injunction hearing and any trial;

c.    An order requiring Defendants to provide an equitable accounting of all revenues, profits and other considerations received in connection with any business they have done with any of Plaintiff's customers;

d.      An order awarding Plaintiff its actual damages in an amount to be determined at trial;

e.      Disgorgement of all profits made by Defendants and all ill-gotten gains received by Defendants to the extent such relief is available on any of the claims for relief herein;

f.      Forfeiture of all compensation paid to Orser during the period of disloyal conduct;

g.      An order awarding Plaintiff pre- and post-judgment interest as allowed by law, as well as its attorneys' fees and the costs of this action; and

h.      An order awarding any and all other available damages, including attorneys' fees and costs, as well as punitive damages on those counts for which such damages are recoverable in an amount to be determined at trial; and

i.      An order granting Plaintiff such other and further relief as is just and proper.

Dated: New York, New York
         August 30, 2022

                                        **LEWIS BRISBOIS BISGAARD & SMITH LLP**

                                        */s/ Adam E. Collyer*
                                        Adam E. Collyer, Esq.
                                        Brian Pete, Esq.
                                        77 Water Street
                                        New York, New York 10005
                                        212.232.1300
                                        Adam.Collyer@lewisbrisbois.com
                                        Brian.Pete@lewisbrisbois.com
                                        *Attorneys for Plaintiff*